# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RONNIE CRAWFORD,<br>　　　　Petitioner,<br><br>　　　vs.<br><br>WARDEN H.J. MARBERRY,<br>　　　　Respondent. | C.A. No. 08-40 Erie<br>District Judge McLaughlin<br>Magistrate Judge Baxter |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

## I.    RECOMMENDATION

It is respectfully recommended that the instant *Petition for Writ of Habeas Corpus*, and Petitioner's subsequent "Motion to Grant Petitioner Immediate Release and or Order his Transfer to a Community Corrections Center" [Document # 15], be denied.

## II.    REPORT

On February 6, 2008, Petitioner Ronnie Crawford, a federal prisoner incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania ("FCI-McKean"), filed this petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2241, challenging the calculation of his federal sentence. In his petition, Petitioner contends that time he served in official detention on state criminal charges, from October 19, 2004, to July 15, 2005, should be credited against his federal sentence. Petitioner subsequently filed a "motion to grant petitioner immediate release and or order his transfer to a community corrections center" [Document # 15], indicating that his sentence was reduced from 70 months to 57 months on July 16, 2008. As a result, Petitioner argues that, after taking into account the sentence reduction, together with the application of the alleged prior custody credit and good conduct time to which he claims to be entitled, his federal sentence has expired. Accordingly, Petitioner seeks an immediate release from federal custody and/or immediate placement in a community correction center.

### A. Relevant Factual and Procedural History

On December 4, 2003, Petitioner pleaded guilty in Monroe County, New York Court to Criminal Possession of a Controlled Substance, for which the court imposed a county sentence of five years' probation on January 22, 2004. (See Declaration of Forest Kelly ("Kelly Declaration"), attached to Respondent's Response as Document 2, at ¶ 6a).

On September 30, 2004, Petitioner was arrested in Rochester, New York, and charged with First Degree Criminal Contempt and Second Degree Aggravated Harassment. (Id. at ¶ 6b). As a result, a violation of probation warrant was filed by the Monroe County Probation Office on October 4, 2004, pursuant to the probation sentence that was imposed on January 22, 2004. (Id. at ¶ 6c).

On October 6, 2004, Petitioner pleaded guilty in Rochester, New York court to the compromised criminal charge of Second Degree Criminal Contempt in connection with his arrest of September 30, 2004. (Id. at ¶ 6d). As a result of this plea, he was ultimately sentenced on December 4, 2004, to a one-year term of imprisonment. (Id. at ¶ 6h).

In the meantime, on October 19, 2004, Petitioner was arrested by Rochester, New York and Monroe County authorities in connection with the outstanding violation of probation warrant that was issued on October 4, 2004, and he was committed to Monroe County Jail. (Id. at ¶ 6e).

On November 9, 2004, Petitioner was named in a four-count federal indictment in connection with criminal conduct that took place on October 19, 2004, and a federal arrest warrant was issued. (Id. at ¶ 6f). On November 10, 2004, a federal writ of *habeas corpus ad prosequendum* was issued directing that Petitioner be produced in the United States District Court for the Western District of New York, from the Monroe County Jail, for purposes of processing criminal charges on November 12, 2004. (See Document 1c attached to Document # 11, Respondent's Response). On November 12, 2004, after Petitioner was produced pursuant to the federal writ, he was arrested on federal criminal charges by agents of the Federal Bureau of Tobacco, Alcohol and Firearms, and was arraigned in federal court. (Kelly Declaration at ¶

6g). Petitioner was thereafter returned to the Monroe County Jail in satisfaction of the federal writ, and a federal detainer was lodged against him by the United States Marshal Service. (Id.).

On May 18, 2005, Petitioner pleaded guilty to violation of probation in the Monroe County Court and was sentenced to a six-month county probation violator term. (Id. at ¶ 6i). On June 1, 2005, Petitioner was deemed to have satisfied the one year state/county sentence that was imposed on December 4, 2004, for the Second Degree Criminal Contempt conviction. (Id. at ¶ 6j).

On July 7, 2005, Petitioner was produced in federal court pursuant to a federal writ of *habeas corpus ad prosequendum* and pleaded guilty to Possession with Intent to Distribute 5 Grams or More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1). (Id. at ¶¶ 6k, 6l). At the conclusion of the plea hearing, Petitioner was returned to Monroe County Jail in satisfaction of the federal writ. (Id. at ¶ 6m).

On July 15, 2005, Petitioner was deemed to have satisfied the Monroe County violation of probation sentence, and he was released to the custody of the United States Marshal Service pursuant to the federal detainer that was previously lodged against him. (Id. at ¶ 6n).

On October 11, 2005, the United States District Court for the Western District of New York sentenced Petitioner to a 70 month term of imprisonment, followed by a five year term of supervised release. (Id. at ¶ 6o). Petitioner was subsequently designated to FCI McKean on November 22, 2005, to serve his federal sentence. (Id. at ¶ 6p). Petitioner received prior custody credit of 87 days for the pre-sentence time he spent in federal custody from July 16, 2005, to October 10, 2005. (See Document 2g attached to Document # 11, Respondent's Response, at p. 2).

On April 25, 2006, Petitioner lost 40 days of good conduct time as a result of disciplinary action that was taken against him for committing the act of "possession of a hazardous tool (tattoo needle)." (Kelly Declaration at ¶ 6q). As a result of the loss of good conduct time, Petitioner's projected release date was changed to September 18, 2010.

Due to a retroactive change in sentencing guidelines regarding possession of crack cocaine, Petitioner's federal sentence was reduced on July 15, 2008 from 70 months to 57

months. As a result, Petitioner's projected release date was re-calculated and is currently set at October 8, 2009. (See Sentence Monitoring Computation Data as of July 17, 2008, attached to Document # 15 at pp. 6-7).

### B. Subject Matter Jurisdiction

Although a challenge to a federal sentence *as imposed* must be made under 28 U.S.C. § 2255, a claim concerning *execution* of a sentence by federal prison and parole authorities is properly brought under 28 U.S.C. § 2241. Bennett v. Soto, 850 F.2d 161 (3d Cir. 1988); Gomori v. Arnold, 533 F.2d 871 (3d Cir.), cert. denied, 429 U.S. 851 (1976); Chambers v. Holland, 920 F. Supp. 618 (M.D. Pa.), aff'd, 100 F.3d 946 (3d Cir. 1996). Because Petitioner is challenging the terms (or execution) of his sentence, his habeas petition properly is brought under Section 2241. See also United States v. Dorsey, 166 F.3d 558 (3d Cir. 1999).

### C. Exhaustion

A federal prisoner seeking habeas relief under 28 U.S.C. § 2241 first must exhaust administrative remedies before bringing his claim to federal court. United States v. Wilson, 503 U.S. 329, 334-335 (1992); Moscato v. Federal Bureau of Prisons, 98 F.3d 757 (3d Cir. 1996); United States v. Keller, 58 F.3d 884 (2d Cir. 1995); United States v. Brann, 990 F.2d 98, 104 (3d Cir. 1993). Bureau of Prisons is the agency charged with administering the federal prison system. Reno v. Koray, 515 U.S. 50, 60 (1995); Wilson, 503 U.S. at 334-335. For federal prisoners challenging Bureau of Prisons determinations, the initial venue is the administrative process. Bureau of Prisons codified its Administrative Remedy Program ("ARP") in 28 C.F.R. Part 542, which provides detailed procedures and guidelines for federal prisoners to seek administrative review of any aspect of their confinement. In particular, 28 C.F.R. § 542.14 requires a prisoner to file an Administrative Remedy (Form BP-9) with the Warden of the institution where he is incarcerated. If the prisoner is not satisfied with the Warden's response, he must appeal the Warden's decision within 20 days to the Regional Director. 28 C.F.R. § 542.15. If the prisoner is not satisfied with the decision of the Regional Director, he must file

an appeal with the General Counsel within 30 days of the date the Regional Director signed its response. 28 C.F.R. §542.15.

Respondent does not dispute that Petitioner has exhausted his administrative remedies with regard to the issues raised in his original petition; however, Respondent does argue that Petitioner has failed to exhaust his administrative remedies with regard to his claim that he is entitled to immediate placement in a community correction center, which Petitioner raises for the first time in his motion for immediate release. (See Document # 17 at p. 10). In support of this argument, Respondent has submitted the Declaration of Vanessa Herbin-Smith, a Supervisory Paralegal employed by the Federal Bureau of Prisons, Northeast Regional Office, who certifies, in pertinent part, as follows:

> 4. On or about October 27, 2008, in connection with the above-captioned litigation, I accessed the computerized indexes of all administrative remedies filed by inmate Ronnie Crawford, Register Number 12469-055, to determine if he had exhausted his administrative remedies regarding any issue concerning placement in a Residential Re-Entry Center (RRC). After a search through inmate Crawford's Administrative Remedy Index as maintained in the Bureau of Prisons computerized database, I determined that to date, he has not filed a single administrative remedy request or appeal regarding RRC Placement.[1] Therefore, he has not exhausted his available administrative remedies on this issue.

(See Declaration of Vanessa Herbin-Smith attached as Document 2 to Document # 17, at ¶ 4). In response, Petitioner incorrectly argues that he is not required to exhaust this issue and, thus, essentially concedes that he has failed to do so. As a result, Petitioner has failed to exhaust his administrative remedies with regard to his claim that he is entitled to immediate placement in a community correction center and, thus, this Court is barred from reviewing said claim. Moscato, 98 F.3d at 762.

### D. Sentence Computation

---

[1] RRCs are commonly referred to as halfway houses. Prior to March 31, 2006, RRCs were known as Community Correction Centers, which is the term used by Petitioner herein.

In any computation of a federal sentence, a court must consider two separate issues. First, the court must establish when the federal sentence commences; and second, the court must determine the extent to which a defendant can receive credit for time spent in custody prior to commencement of the sentence. Chambers v. Holland, 920 F.Supp. 618, 621 (E.D. Pa.), aff'd. 100 F.3d 946 (3d Cir. 1996).

### 1. Commencement of sentence

To determine the date a sentence commences, the Bureau of Prisons ("B.O.P.") relies upon Title 18, Section 3585(a), which provides the mandatory time period when a federal sentence begins to run for offenses that occurred on or after November 1, 1987:

> (a) **Commencement of sentence**. -- A sentence to a term of imprisonment commences on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served.

18 U.S.C. § 3585(a).

Thus, a federal sentence does not commence until the prisoner is actually received into federal custody for that purpose. McCarthy v. Doe, 146 F.3d 118, 122 (2d Cir. 1998); Barden v. Keohane, 921 F.2d 476 (3d Cir. 1990). Furthermore, "a federal sentence cannot commence prior to the date it is pronounced, even if made concurrent with a sentence already being served." United States v. Flores, 616 F.2d 840, 841 (5th Cir. 1980), citing Wilson v. Henderson, 468 F.2d 582, 584 (5th Cir. 1972).

In this case, it is beyond dispute that Petitioner's federal sentence commenced on October 11, 2005, the date it was pronounced and, thus, the earliest possible date it could have commenced. To the extent Petitioner may argue otherwise, such argument is without merit.

### 2. Prior Custody Credit

Credit for time spent in custody prior to the date a federal sentence begins to run may be granted pursuant to 18 U.S.C. § 3585(b), which provides:

> (b) **Credit for prior custody**. -- A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention

6

> prior to the date the sentence commences –
>
> > (1)  as a result of the offense for which the sentence was imposed; or
> >
> > (2)  as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;
> > **that has not been credited against another sentence**.

18 U.S.C. § 3585 (emphasis added).

To receive federal credit for time spent in custody prior to sentencing, Petitioner must satisfy the requirements of either section 3585(b)(1) or section 3585(b)(2) and he must not have already received credit towards some other sentence for the time he was held in custody.

Here, Petitioner contends that time he served in official detention pursuant to state criminal charges, from October 19, 2004, through July 15, 2005, should be credited against his federal sentence. In response, Respondent argues that Petitioner has already received all prior custody credit to which he is entitled under section 3585 against his federal sentence. In support of this argument, Respondent has submitted records from the Monroe County Sheriff's Office indicating that Petitioner received credit against his county sentences for all time he served in official detention from October 19, 2004, to July 15, 2005. (See Document 2c attached to Document # 11, Response, at pp. 5-6). After satisfaction of his county sentences, Petitioner was released to the custody of federal authorities and remained in official detention until his federal sentence was imposed on October 11, 2005. (See Document 2b attached to Document # 11, Response, at p. 2). Since the time served from July 16, 2005 to October 10, 2005 was not credited against any other sentence, Petitioner received prior custody credit of 87 days against his federal sentence, pursuant to 18 U.S.C. § 3585(b). (See Document 2g attached to Document # 11, Response, at p. 2).

Petitioner has not submitted any documentary evidence to refute the evidence Respondent has submitted to this Court. Instead, Petitioner argues that, although he was arrested on October 19, 2004 by Monroe County authorities, the county charges were dismissed or vacated, as a result of which he then lapsed into federal custody. Accordingly, Petitioner contends that all time served from October 19, 2004, to July 15, 2005, should have been applied

7

as prior custody credit against his federal sentence. However, there is no evidence in the record to support Petitioner's assertion that his county sentences were dismissed or vacated prior to his release to federal authorities on July 15, 2005, nor is there any evidence that the county authorities ever relinquished primary custody of Petitioner to federal authorities prior to such time.

With regard to primary custody, it is well-settled that the sovereign that first arrests a defendant has primary jurisdiction over him until that sovereign relinquishes such jurisdiction to another sovereign by, e.g., bail release, dismissal of the primary charges, parole release, or expiration of the primary sentence. See, e.g., Rios v. Wiley, 201 F.3d 257, 272 (3d Cir. 2000); United States v. Cole, 416 F.3d 894, 897 (8th Cir. 2005); Taylor v. Reno, 164 F.3d 440 (9th Cir. 1998); Chambers v. Holland, 920 F.Supp. 618, 623 (M.D.Pa.), aff'd,100 F.3d 946 (3d Cir. 1996)(table). Here, it is beyond dispute that Petitioner was first arrested by Monroe County authorities on October 19, 2004, pursuant to an outstanding probation violation warrant. (See Kelly Declaration at ¶ 12). While federal authorities subsequently borrowed Petitioner from county custody pursuant to federal writs of *habeas corpus ad prosequendum*, this did not result in the relinquishment of custody. See Rios, 201 F.3d at 274 (when a prisoner is in federal custody pursuant to a writ of *habeas corpus ad prosequendum*, the state is still the primary custodian "unless and until the first sovereign relinquishes jurisdiction over the prisoner"). Thus, Petitioner's argument that "he was originally placed into federal custody on November 12, 2004," being the date he was first produced pursuant to a federal writ of *habeas corpus ad prosequendum*, is without merit. (See Document # 12, Petitioner's Brief, at p. 4).

Since the record is clear that primary custody of Petitioner was not relinquished to federal authorities until July 15, 2005, Petitioner has received all prior custody credit to which he is entitled against his federal sentence.

**E.     Certificate of Appealability**

Section 102 of the Antiterrorism and Effective Death Penalty Act (28 U.S.C. § 2253(as amended)) codified standards governing the issuance of a certificate of appealability for

appellate review of a district court's disposition of a habeas petition. Amended Section 2253 provides that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." Where the federal district court has rejected a constitutional claim on its merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong..." Szuchon v. Lehman, 273 F.3d 299, 312 (3d Cir. 2001) quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000). A petitioner meets this standard if he can show that the issue "is debatable among jurists, or that a court could resolve the issue differently, or that the question deserves further proceedings." McCracken v. Gibson, 268 F.3d 970, 984 (10th Cir. 2001). Under 28 U.S.C. § 2253(c)(3), the district court must identify which specific issues satisfy the standard.

However, federal prisoner appeals from the denial of a § 2241 habeas corpus proceeding are not governed by the certificate of appealability requirement. United States v. Cepero, 224 F.3d 256, 264-65 (3d Cir. 2000); 28 U.S.C. § 2253(c)(1)(B).

### III. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the instant *Petition for Writ of Habeas Corpus*, and Petitioner's subsequent "Motion to Grant Petitioner Immediate Release and or Order his Transfer to a Community Corrections Center" [Document # 15], be denied.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4 B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to timely file objections may constitute a waiver of some appellate rights. See e.g., Nara v. Frank, 488 F.3d 187 (3d Cir. 2007).

/s/ Susan Paradise Baxter
SUSAN PARADISE BAXTER
Chief U.S. Magistrate Judge

Dated: March 26, 2009

cc: The Honorable Sean J. McLaughlin
United States District Judge